In re Charlie Gene FORESTER and Susan Orlane Forester, Debtors.

CONTINENTAL GRAIN, f/k/a Allied Mills, Inc., Plaintiff,

v.

Charlie Gene FORESTER and Susan Orlane Forester, Defendants.

Bankruptcy No. 82–00430–S.
Adv. No. 82–0492–S.

United States Bankruptcy Court,
W.D. Missouri, S.D.

March 10, 1983.

Daniel T. Moore, Poplar Bluff, Mo., for plaintiff.

William A. Wear, Springfield, Mo., for debtors/defendants.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this complaint, Continental Grain, formerly known as Allied Mills, Inc., objected to the discharge of debtors alleging that they issued incorrect financial statements, false guarantees and submitted fraudulent contracts on which they received payment. Debtors answered by general denial. A hearing was held at which debtors appeared in person and by counsel; Allied appeared by counsel and representatives. After the hearing of evidence, the matter was taken under advisement.

The evidence shows that debtors' relationship with Allied began in 1977, apparently as a cash customer. In January of 1978, Allied received a credit application from the business, prepared by Patricia Forester. It was signed by Patricia, who was Charlie's sister, and by his parents. The application was accompanied by statements of financial condition of the business and Elmer Forester, Charlie's father. Allied then opened a line of credit for the business at $6,000.00. Allied was thereafter furnished guaranty of the line of credit by Elmer and Fonda, his wife.

In late February of 1979, in keeping with Allied's policy of an annual review of credit, the business submitted a new credit application. On this occasion, the business application was prepared and signed by Elmer and Fonda Forester. It was supported by their personal statement of financial condition and a statement from the business, together with a profit and loss statement from the business. A line of credit was increased to $25,000.00. No personal guarantee was received nor apparently was it requested.

Allied now asserts that the many of the representations made in or by the statements were false. Part of the controversy revolves around the issue of to whom credit was extended. The 1977 letter acknowledging the business relationship was addressed to

"Charlie Forester

Forester Feed Store"

The 1978 application and acknowledgement of credit named Patricia, Elmer and Fonda Forester. Charlie was not in Missouri when this application was made. The 1979 application and acknowledgement of credit named only Elmer and Fonda Forester. For the majority of all of these times, Charlie Forester ran the business.

Allied's sales and credit people visited the business from time to time. They knew that Charlie generally operated it and thought that the other family members provided capital or had some interest in the business. The documents filed in support of the applications to obtain credit certainly contain no descriptions or reservations which would cause Allied to conclude that all of the parties named were not proprietors.

Charlie Forester, one of the debtors, contends that Allied, through its district salesman, Masterson, knew that he alone ran the business and that none of the others were involved as owners. He argues that Masterson is the person who told him what to do and that if Allied was misled, it was Masterson's fault and not his. He admits, however, that he signed his parents' name to the 1979 credit application and statement of condition.

Under Section 523 of the Code, Title 11 U.S.C., a debtor is not discharged for any debt

"(2) for obtaining ... property ... or an extension, renewal, or refinance of credit by ...

(A) ...

(B) use of statement in writing—

(i) that is materially false;

(ii) respecting the debtors or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, ... or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;"

The party seeking to deny discharge has the burden of proof. Rule 407, Rules of Bank-

ruptcy Procedure. The proof must be clear and convincing. *In re Barlich,* 1 B.C.D. 412 (Bkrtcy.R.I.1974).

There is no evidence that debtor Charlie Forester prepared or submitted the 1978 application and statements. There is no question that he submitted the 1979 application and statements. The Court finds that he was responsible for the information contained in the 1979 documents. There is also no question and the Court so finds that Allied relied upon the documents in extending credit.

The question is are the 1979 documents materially false? There is no evidence that the recitation of assets and debts are incorrect. There is no evidence that the profit and loss statement was inaccurate. The false representation here is that Elmer and Fonda were lending their financial resources to the business. The fact that they did not sign the 1979 documents is some evidence of misrepresentation but it is not conclusive. Elmer and Fonda were not called as witnesses and there is no credible evidence that they refused to be responsible.

Allied seeks to hold debtors responsible for losses in the amount of $63,086.26. The line of credit extended as a result of the applications was $25,000.00. The letter written by Allied to Forester Feed setting out a line of credit states, inter alia, that "[t]his credit line does not necessarily reflect the maximum credit available to you, as all terms and approvals are subject to periodic review." It is apparent, therefore, that in granting credit beyond the $25,-000.00 amount that Allied relied upon factors and information other than those contained in the credit applications and the evidence does show that credit was also extended based upon orders booked.

■ The evidence is insufficient to enable the Court to conclude that the fact that Charlie Forester signed his parents' names to the statements represents a material falsity upon which Allied relied to its detriment. There may have been apparent authority for Charlie Forester to sign. The parents may have been agreeable to sup-porting the venture at the time but now that the debt is real, they may have changed their minds. In any event, Allied has not borne its burden of proof on the issue. *In re Drewett,* 13 B.R. 877 (Bkrtcy. E.D.Pa.1981); *In re Whiting,* 10 B.R. 687 (Bkrtcy.E.D.Pa.1981).

■ There are, however, transactions where debtor Charlie Forester made sales as to which credit was extended but never remitted the proceeds to Allied. In those instances, involving customers named Arnold, Barton, Jones and Johnson, debtor admits overcharges or conversions totaling $7,586.29. Debtor Charlie Forester is DENIED DISCHARGE as to that amount.

Susan Forester, the co-debtor, is discharged as to all claims brought by Allied. There is no evidence that she made any representations at all. *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540 (D.C.W.D.Va. 1967).

This Order constitutes Findings of Fact and Conclusions of Law as required by Rule 752, Rules of Bankruptcy Procedure.