**In the Matter of William R. WINTROW, Jr. aka Rick Wintrow, Debtor.**

**Carlton E. and Arline Z. SHAFER, Plaintiffs,**

v.

**William R. WINTROW, Jr., Defendant.**

**Bankruptcy No. 3–84–00497.**
**Adv. No. 3–84–0161.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 12, 1986.

Larry R. Gearhardt, Townsend Foster, Jr., Troy, Ohio, for defendant.

Gary J. Leppla, Dayton, Ohio, for plaintiffs.

### DECISION DENYING PLAINTIFF'S COMPLAINT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) AND (a)(6)

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(I), in which the plaintiffs, Carlton E. and Arline Z. Shafer, seek to have a debt owed to them by the defendant-debtor, William R. Wintrow, Jr. declared an exception to discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).

On June 19, 1981, the Shafers filed a complaint against Wintrow in the Common Pleas Court of Miami County, Ohio alleging that he breached a contract he entered into with plaintiffs to build them a house to be used as their residence by constructing a house that grossly differed from his representations concerning a house and that he did so willfully, deliberately and malicious-

ly. The complaint sought compensatory damages of $23,000 and punitive damages of $100,000, plus attorney's fees and costs. The matter was resolved without trial and the debtor, pursuant to an Ohio statute, confessed judgment in the amount of $23,000.00, plus interest from the date of judgment, and costs.[1] There was no recital of the basis for the amount set forth in the confession of judgment entry itself. *Shafer v. Wintrow*, No. 81–284 (Ct.C.P. Miami Cty. July 20, 1982).[2]

On March 12, 1984, the debtor filed a voluntary bankruptcy petition under Chapter 7, Title 11, U.S.C. The plaintiffs in the state court action then initiated an adversary proceeding in this court arguing that the debt of defendant-debtor should be declared nondischargeable. Counsel for the plaintiffs urged that the state court judgment should be given preclusive effect by this court and therefore no further evidence would be required to determine the debt an exception to discharge; and further, if the state court judgment were not given preclusive effect, the evidence presented at the trial in this court sustains the plaintiff's position that the debt is an exception to discharge under provisions of 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). These grounds were argued at the trial held in this matter and were briefed by both counsel in post-trial memoranda.

For the reasons set forth herein, the court holds that the state court judgment does not preclude the debtor from presenting evidence in this proceeding and the debt is discharged.

## I.

## THRESHOLD QUESTION

The threshold question to be addressed by the court is whether the entry confessing judgment in the state court proceeding precludes the defendant-debtor from presenting any evidence in the subsequent bankruptcy court proceeding to determine the dischargeability of the debt. The resolution of this question involves an analysis of the interrelationship of current concepts of preclusion, developing judicial interpretation of the full faith and credit statute, 28 U.S.C. § 1738,[3] and the exclusive nature of bankruptcy court determinations of the dischargeability of debts under 11 U.S.C. § 523(c). The accommodation of these competing principles is not only necessary to the comity involved in a federal-state judicial system, but is also required as a framework for the resolution of issues repeatedly presented in dischargeability proceedings.

1. Under Ohio law, a judgment by confession is defined by statute:

   A person indebted, or against whom a cause of action exists, may personally appear in a court of competent jurisdiction, and, with the assent of the creditor, or person having such cause of action, confess judgment; whereupon judgment shall be entered accordingly.

   The debt or *cause of action shall be briefly stated in the judgment*, or in a writing to be filed as pleadings in other actions.

   Such judgment shall authorize the same proceedings for its enforcement as judgments rendered in actions regularly brought and prosecuted. The confession shall operate as a release of errors (emphasis added).

   OHIO REV.CODE ANN. § 2323.12 (Page 1981). Judgment by Confession.

2. The entry reads as follows:

   "In the Common Pleas Court of Miami County, Ohio Civil Division, Carlton E. Shafer, et al., Plaintiffs –vs– William R. Wintrow, Defendant, Case No. 81–284 (Judge Kisler) Judgment Entry.

   This matter having come before the court upon application of the parties, and the Defendant herein having indicated through counsel that he wishes to confess judgment in this matter, judgment is hereby awarded to Plaintiffs against Defendant, WILLIAM R. WINTROW, in the amount of Twenty-Three Thousand Dollars ($23,000.00) plus interest from the date of judgment together with Plaintiffs' costs in this matter" The entry bears a judge's signature, the signatures of Gary J. Leppla, attorney for Plaintiffs, Richard V. Grimes, Jr., attorney for Defendant and William R. Wintrow, Defendant.

3. This statute provides, in part, that the "judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State." The statute was passed by Congress in 1790 to extend the reach of the full faith and credit clause of U.S. CONST., art. IV. § 1, to federal as well as state courts. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483–84 n. 24, 102 S.Ct. 1883, 1898–99, 72 L.Ed.2d 262 (1982).

## A. Concepts of Preclusion

The competing principles of the receipt of relevant evidence and judicial economy receive a resolution in current concepts of preclusion. The words res judicata have been encumbered with a variety of meanings which have been used in a variety of contexts, with the result that rather than adding clarity to discussions, the words have increased confusion. Accordingly, an attempt has been made in recent court decisions to retain the concepts but retire the usage of the words res judicata and instead use the words claim preclusion and issue preclusion.[4]

In an attempt to clarify the varying terminology that has developed in this area and to continue a consistent use of terminology regarding the doctrine of preclusion, this court shall use the term claim preclusion to refer to the effect of a prior judgment in precluding presentation of all matters that could have been litigated in an earlier suit, whether such matters were litigated or not, and issue preclusion to refer to the effect of a prior judgment in precluding presentation of matters that were actually litigated and decided in an

earlier suit. See also 18 C. Wright A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4402 (1981).

While the usage of the terms claim preclusion and issue preclusion may be helpful in present and future clarification of the doctrine of preclusion, prior cases such as *Brown v. Felsen* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981) did not use preclusion language, but rather used the terms res judicata and collateral estoppel and this variance in terminology must be kept in mind in analyzing such opinions. This is critical because *Brown* and *Spilman* provide the basis for a resolution of the threshold question.

While the clear holding in *Brown* is to deny claim preclusion effect to prior state court judgments in subsequent bankruptcy dischargeability litigation involving fraud claims, the decision did not determine the question of issue preclusion.[5]

The question of issue preclusion was addressed directly in *Spilman,* where the Sixth Circuit stated:

This court holds that where all the requirements of collateral estoppel are

---

**4.** As set forth in the Supreme Court's decision in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984): "The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of 'res judicata'. Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'. Issue preclusion refers to the effects of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. This Court on more than one occasion has used the term 'res judicata' in a narrow sense, so as to exclude issue preclusion or collateral estoppel. When using that formulation, 'res judicata', becomes virtually synonomous with 'claim preclusion.' In order to avoid con-

fusion resulting from the two uses of 'res judicata,' this opinion uses the term "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit. (Citations omitted) In the subsequent case of *Marrese v. American Academy of Orthopaedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985), the Supreme court continued the same use of this terminology: "In this opinion, we used the term 'claim preclusion' to refer to 'res judicata' in a narrow sense, *i.e.*, the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. In contrast, we used the term 'issue preclusion' to refer to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."

**5.** "This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.

met, collateral estoppel should preclude relitigation of factual issues.

Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome.

. . . .

Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, or hold a hearing if necessary (citations omitted).

*Id.* at 228.

Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy.

*Id.* at 227.

▆ Thus, while it is clear that principles of claim preclusion cannot apply to the threshold question presented in this proceeding, the principles of issue preclusion may be applicable. In order to properly determine their applicability, an examination must be made of their relationship to the full faith and credit statute as it has been interpreted in federal judicial decisions.

### B. Full Faith and Credit Statute

In addition to changes in terminology, the concepts of preclusion have not remained static but have been evolving, particularly in relation to federal judicial interpretation of the full faith and credit statute, which has received considerable attention in a series of Supreme Court cases: *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Marrese v. American Academy of Orthopaedic Sur-*

*geons,* —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Parsons Steel, Inc. v. First Alabama Bank,* —— U.S. ——, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). While these cases have as their focus principles of claim preclusion rather than issue preclusion, they nevertheless represent a direction for federal courts to follow. As the Court stated in *Kremer:*

It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken (citations omitted).

*Id.* 456 U.S. at 481–82, 102 S.Ct. at 1897–98.

Again, in *Marrese* the court stated:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.

*Id.* 105 S.Ct. at 1331–32.

While an initial reading of this language appears to provide federal courts with clear direction toward a recognizable goal, the determination of state claim preclusion principles, while an achieveable objective, is at a minimum, a complicated undertaking in an unclear area. As the Chief Justice observed in his concurring opinion in *Marrese:*

[N]o guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of *res judicata* doctrine will dispose of most cases like this.

I cannot agree with the court's interpretation of the jurisdictional compentency requirement. (citation omitted).

*Id.* at 1336. (Burger, C.J., concurring)

The Chief Justice then provided several examples of the indeterminate state [Illinois] law involved in *Marrese,* including "whether the notion of 'questions which could have been raised' should be applied narrowly or broadly (footnotes omitted)." *Id.*

The difficulty and uncertainty in the application by federal courts of state law preclusion concepts appears again in connection with Ohio law in *Migra,* where the Court considered the preclusive effect of a state [Ohio] court judgment in later federal litigation under 42 U.S.C. §§ 1983, 1985 and stated:

· "Accordingly, in the absence of federal law modifying the operation of § 1738, the preclusive effect in federal court of petitioner's state-court judgment is determined by Ohio law." *Id.* 465 U.S. at 81, 104 S.Ct. at 896.

"It appears to us that preclusion law in Ohio has experienced a gradual evolution, and that Ohio courts recently have applied preclusion concepts more broadly than in the past." *Id.* at 85, 104 S.Ct. at 898.

The balance of the opinion recites the indeterminate posture of Ohio preclusion law and concludes:

[W]e are unable to determine whether that court [the Sixth Circuit] was applying what it thought was the Ohio law of preclusion. ... Our holding today makes clear that Ohio state preclusion law is to be applied to this case. Prudence also dictates that it is the District Court, in the first instance, not this Court, that should interpret Ohio preclusion law and apply it.

*Id.* at 87, 104 S.Ct. at 899.

The Sixth Circuit in *Berks Title Insurance Co. v. Haendiges,* 772 F.2d 278, 281 (6th Cir.1985) concluded:

This court must look to Ohio law to determine what preclusive effect to give to the state court judgment. *See* 28 U.S.C. § 1738. However, Ohio law on the issue of claim preclusion is unclear and in a state of flux. *See Johnson's Island, Inc. v. Board of Township Trustees,* 69 Ohio St.2d 241, 431 N.E.2d 672, 674–75 (1982), *Stromberg v. Board of Education of Bratenahl,* 64 Ohio St.2d 98, 413 N.E.2d 1184, 1186 (1980); *Norwood v. McDonald,* 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943).

The most recent decision by the Ohio Supreme Court on this subject, *Office of Consumers' Counsel v. Public Utilities Commission of Ohio,* 16 Ohio St.3d 9, 475 N.E.2d 782, (1985) (per curiam) did little to resolve the indeterminate status of Ohio preclusion law.[6]

The current view of the Sixth Circuit on the claim preclusion effect of an Ohio judgment remains as set forth in *Duncan v. Peck,* 752 F.2d 1135, 1139 (1985):

Under Ohio law, "[T]o constitute a bar, there must be identity not only of subject matter but also of cause of action. In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter" *Norwood v. MacDonald,* 52 N.E.2d at 71 (1943). The test for determining whether a second suit is for the same cause of action as the first is to consider the facts necessary to sustain the two claims. Although this test construes a cause of action more narrowly than the current Restatement of Judgments (*see* Restatement (Second) of Judgments § 24, at 196–204 (1982)), it has not been limited by the Supreme Court of Ohio, *see Johnson's Island, Inc. v. Board of Township Trustees,* 69 Ohio St.2d 241, 431 N.E.2d

---

**6.** "This court has held that where a valid final judgment has been rendered on the same issue between the same parties, that judgment is *res judicata* as to subsequent actions, even if it was erroneous. *La Barbara v. Batsch* (1967), 10 Ohio St.2d 106, 227 N.E.2d 55 [39 O.O.2d 103], syllabus." *Office of Consumers' Counsel,* 475 N.E.2d at 784.

672, 674–75 (1982), and has frequently been applied in this circuit when the issue is the claim preclusive effect of a prior Ohio state court judgment. *See Federal Deposit Insurance Corp. v. Eckhardt,* 691 F.2d 245, 248 (6th Cir. 1982); *Francis H. Fisher v. Midwesco Enterprise, Inc.,* 477 F.Supp. 169, 172 (S.D.Ohio 1979). Under *Migra supra,* this is the standard we should apply. *See also* Ferriell, *Res Judicata in Ohio: Preclusion of Causes of Action or Claims?,* 10 Ohio N.U.L.Rev. 241 (1983), and *The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 Am.Bankr. L.J. 349 (1984) and 59 Am.Bankr.L.J. 55 (1985).

The Supreme Court cases of *Kremer, Migra, Marrese* and *Parsons Steel,* since they focus on claim preclusion and not issue preclusion and do not involve bankruptcy cases, would appear to have little applicability to dischargeability proceedings; however, they have been cited by various bankruptcy courts to predict that if the Sixth Circuit were to consider the issues raised in *Spilman* in light of these decisions, it would certainly analyze the issues in a different manner and further the suggestion has been that it would reach a different result. *In the Matter of Armstrong,* 13 B.C.D. 859 (Bankr.N.D.Ala.1985), *In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mi. 1985), *In re Byard,* 47 B.R. 700 (Bankr.W. D.Tenn., 1985). A focus of these criticisms of *Spilman* has been specifically directed to that portion of the opinion which stated, "If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman* at 228. An effect of these bankruptcy court decisions would be to provide undue deference to indeterminate state court claim and issue preclusion decisions and thereby not only dilute the congressional mandate that bankruptcy courts exclusively determine dischargeability issues under 11 U.S.C. § 523(c), but also "give state court judgments greater preclusive effect than would the courts of the State rendering the judg-

ment." *Marrese,* —— U.S. ——, 105 S.Ct. at 1334.

### C. Dischargeability Determinations Under 11 U.S.C. § 523(c)

While recent United States Supreme Court cases require that a federal court look to the state rendering the judgment to determine the claim preclusive effect the state would give its own judgment, including a default judgment, issues of dischargeability determination under 11 U.S.C. § 523(c) were exclusively "granted to bankruptcy courts.... Congress intended to take the determinations governed by 11 U.S.C. § 523(c) away from state courts and grant exclusive jurisdiction in the bankruptcy courts." *Spilman* at 226. *See also* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy, supra.*

Title 11 U.S.C. §§ 523(c) in effect at the time this case was filed provided:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

Accordingly, whether or not the state would accord issue preclusion to its own judgment, it oversimplifies the conflict between the exclusive determination of dischargeability issues under 11 U.S.C. § 523(c) and the preclusion concepts developed in connection with existing interpretations of the full faith and credit statute for a bankruptcy court to simply examine state issue preclusion law and, if the bankruptcy court is satisfied that the state would accord issue preclusion to its own judgment in subsequent state litigation, hold that such a state determination bars the presentation of evidence in a subsequent bankruptcy court dischargeability proceeding without, at a minimum, a further inquiry as

to the standards of proof used by a state court. As the Sixth Circuit held, "Thus even if there were a factual basis for the state court to make a finding of no wanton or willful misconduct, the Bankruptcy Court would be required to apply the *bankruptcy dischargeability standard to those facts*" (emphasis added). *Spilman* at 229. *See also In re Louis*, 13 B.C.D. 1 (Bankr.E.D.Wis.1985), *In re D'Annnolfo*, 13 B.C.D. 976 (Bankr.D.Mass.1985), and *In re Oakes*, 24 B.R. 766 (Bankr.N.D.Oh.1982).

Furthermore, the United Supreme Court, in the interim between *Brown* and *Marrese*, denied certiorai to a decision of the 5th circuit in *Patino's Inc. v. Poston (In re Poston)*, 735 F.2d 866 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 591, 83 L.Ed.2d 700 (1984), holding that a state court default judgment stating that a debt was incurred through false representations and fraud would *not be given issue preclusive effect* on the matter of nondischargeability, since there was an insufficient factual basis in the pleadings to support the court's judgment. *See also In re Daley*, 776 F.2d 834, 13 C.B.C. 2d 927 (9th Cir. 1985).

■ A bankruptcy court in a dischargeability proceeding under 11 U.S.C. § 523(c) must examine both the standard of proof required for the state court judgment and the proof actually presented and recited in the state court judgment. Any other position would not only exault form over substance, but defeat Congress' clear intent in its grant of exclusive authority in this area to the bankruptcy court. *Brown,* 442 U.S. at 135–36, 99 S.Ct. at 2211, *Marrese,* — U.S. at —, 105 S.Ct. at 1335, *Brown,* 442 U.S. at 135–36, 99 S.Ct. at 2211, *In re*

*Daley,* 776 F.2d 834, 839 (9th Cir.1985), *Spilman* at 226, *In re Moultrie* 51 B.R. 368 (Bankr.W.D.Wash.1985).[7]

Congress' intent insofar as bankruptcy is concerned derives from the constitutional mandate of art. I, § 8, cl. 4 to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Congress has chosen to exercise that mandate in enacting § 523(c), Title 11 U.S.C., which grants the bankruptcy court exclusive jurisdiction over exceptions to discharge based on debts arising out of the debtor's false representations or fraud or by which the debtor has caused willful and malicious injury. This reinforces the importance of ensuring that these grounds for exceptions to discharge be uniformly interpreted under a federal standard.[8] That federal standard as set forth by the Sixth Circuit is one of clear and convincing evidence. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1165 (6th Cir.1985).

The various states have different standards concerning false representation and fraud or willful and malicious injury. The standard in Ohio is, for the most part, preponderance of the evidence, although sometimes it is clear and convincing evidence; when to apply which is unclear. 51 Oh.Jur.3d *Fraud and Deceit* §§ 225, 255, 256 and 280 (1984).

Allowing varying state preclusion law, which in most instances does not relate to the subject matter of bankruptcy, to bar a bankruptcy court's duty to determine a dischargeability proceeding involving 11 U.S.C. § 523(c) would violate standards established by the Sixth Circuit and defeat the congressional purpose of exclusive dischargeability determination. For example,

---

7. *In re Moultrie* held that a bankruptcy court is not required to apply the full faith and credit statute because the Ninth Circuit Court of Appeals held in *In re Houtman,* 568 F.2d 651 (9th Cir.1978) that the doctrine of collateral estoppel does not apply to an issue litigated in state court as the bankruptcy court has exclusive jurisdiction in the area of dischargeability. At most, that court would hold the prior state court judgment could be submitted as evidence and an argument made that "it establishes a *prime facie* case in the discharge proceedings." *Id.* at 373.

8. Even in dischargeability issues where concurrent jurisdiction exists between the bankruptcy court and a state court such as alimony determinations [11 U.S.C. § 523(a)(5)], the comments of the House and Senate Committees on the Judiciary make clear a federal standard not a state determination shall control. *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1107 (6th Cir.1983).

two identical debts arising from a builder's failure to complete a building contract which resulted in a default or confessed judgment against the builder in two different states, as a result of varying state standards relating to the degree of proof required by the state and the state's law regarding preclusion, would bar the subsequent presentation of relevant evidence in a bankrupcy dischargeability proceeding with regard to the exact same factual situation in one instance and not in another, and consequently the exact same debt would be discharged in one instance and not in the other. Such a result could not be condoned by this court, contemplated by Congress nor countenanced by the Constitution.

### D. Resolution of Threshold Question

■ As in the within proceeding, the controlling case on the issue of claim preclusion *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, involved a stipulation of judgment by the debtor that did not specify the basis for the damages recited therein and the Court held, "that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Id.* at 138–39, 99 S.Ct. at 2212–13. The Court further concluded "It makes little sense,... to resolve a federal dischargeability question according to whether or not the parties in state court waived their rights to engage in hypothetical litigation in an inappropriate forum." *Id.* at 137, 99 S.Ct. at 2212. Accordingly, the state court judgment is not entitled to claim preclusive effect.

Not only is the state court judgment not entitled to claim preclusive effect, it is not entitled to issue preclusive effect for several reasons. First, the resolution of dischargeability issues pursuant to 11 U.S.C. § 523(c), which are the issues in this proceeding, are committed to the exclusive jurisdiction of the bankruptcy court, *Daley,*

*Spilman, Moultrie,* and require the application of a federal standard of proof, which is clear and convincing evidence. *Martin.* Second, the standard of proof in Ohio is preponderance of the evidence in most cases, and the judgment in this case is silent as to the standards of proof applied and unclear as to the basis for the judgment. In such cases no preclusive effect can be given to the state court judgment. *Brown, Patino's, Inc.,* and *Spilman.* Finally, even if Ohio preclusion concepts were applied in this case, the result would be the same.

■ Assuming arguendo that dischargeability proceedings under 11 U.S.C. § 523(c) require an examination of Ohio claim or issue preclusion principles, Ohio preclusion law would allow subsequent state court litigation since the complaint contains at least two causes of action and could have resulted in a judgment for breach of contract and compensatory damages or a judgment for fraud which could have included compensatory damages and punitive damages.[9] Since Ohio law provides that subsequent litigation is barred only on the facts necessary to a determination of a single cause of action but not if the proceeding involved multiple causes of action even though they relate to the same subject matter; or, requires that the issue must have been admitted or actually tried and decided and must be necessary to the final judgment, the within confession of judgment would not be given claim or issue preclusive effect in the Ohio courts. *Norwood v. McDonald, Duncan v. Peck.* See also *Henderson v. Ryan* 13 Ohio St.2d 31, 233 N.E.2d 506 (1968); 63 Oh.Jur.3d *Judgments* § 420 (1985).

While counsel for the plaintiff may urge that preclusion principles apply, no persuasive citation supports such a position. As the United States Supreme Court stated:

Because the defendant has, by the decree, waived his right to litigate the is-

---

9. A strong argument could be made that the confession of judgment was only as to those allegations relating to breach of contract and not fraud since the amount of the judgment reflected only compensatory damages and did not include any amount for punitive damages.

sues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). The proper recognition of the exclusivity of dischargeability proceedings under 11 U.S.C. § 523(c) and the required comity due state court preclusion principles finds appropriate resolution in the articulation in *Spilman:* "Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. This court holds that where all the elements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues." *Spilman,* 656 F.2d at 228. *See also Smith v. Pitner (In re Pitner),* 696 F.2d 447 (6th Cir.1982).

There being an absence of evidence that all the elements of collateral estoppel have been met in the prior state court proceeding, the court holds that the entry confessing judgment in the state court proceeding does not preclude the debtor from presenting evidence in this court proceeding to determine the dischargeability of the debt under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).

## II.

### DISCHARGEABILITY QUESTION

The issue remaining for decision is whether the debt due the plaintiffs from the defendant is an exception to the debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(A)—"false pretenses, a false representation, or actual fraud"; or, pursuant to 11 U.S.C. § 523(a)(6)—"for willful and malicious injury by the debtor to another entity or to the property of another entity."

### FINDINGS OF FACT

The complaint alleges that:

1. On or about November 4, 1980, Plaintiffs entered a contract for the purchase of real estate with Defendant pursuant to which Defendant agreed to complete construction pursuant to a building contract. . .

2. Pursuant to said contract Plaintiffs advanced to the Defendant the sum of $8,000.00 on or about November 12, 1980, together with an additional $10,-000.00 on or about February 17, 1981.

3. Defendant did willfully, deliberately and maliciously fail and refuse to perform said construction in accordance with the terms of the contract by proceeding with the construction of a building on the subject location which grossly differed from the oral representations made by the Defendant, as well as the terms of the aforementioned written contract.

The complaint requested the "debtor not be discharged from the debt owing to the Plaintiffs as provided by 11 U.S.C. § 523(a)(6)." Following a pre-trial conference, by agreement of the parties, the claim was also alleged to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The defendant's answer provided that "he agreed to a judgment against him in Case No. 81–248 in the Common Pleas Court of Miami County, Ohio as a compensatory claim," and "that he admitted to owing certain amounts to the Plaintiff for the reason that he did not have the necessary attorney fees to litigate the claim; that he had no assets" and otherwise denied the complaint.

The parties stipulated to the existence of the written contract and its attachments, the amounts paid by the plaintiffs to the defendant and the existence of the state court judgment. One of the plaintiffs, Carlton E. Shafer, and his step-daughter, Linda Lamka, and the defendant, William R. Wintrow, Jr. testified at the trial. No exhibits, other than those stipulated to, were introduced.

As frequently occurs in dischargeability proceedings involving allegations of fraud

or malicious injury, the parties' testimony is often directly contradictory. The evidence presented in this case reveals that the defendant was employed as a real estate salesperson when the plaintiffs, who had resided in Florida, but decided to move to Ohio, first met him. During the course of showing the plaintiffs houses that were for sale, the defendant stated that he had experience as a contractor and since the plaintiffs found that the house they liked was "too much for our budget" (Tr. 108) the defendant offered "to build them a house that they could afford" (Tr. 178).

While the written contract would indicate that the parties had reached an agreement concerning construction of a house, the written contract is a two page document that, at a minimum lacks detailed specificity as to the various rights and duties of the parties, and, as is clear from their testimony, both parties carried different expectations concerning the meaning of the written contract.

The first indication of the different expectations appears on the attachment to the parties' contract. The defendant produced a pre-printed blueprint as the plans for the completed house and the parties then noted handwritten adjustments on these plans. The defendant stated he told the plaintiffs before the contract was signed that the room sizes on the plans were nominal drawings and could vary ten (10) or more inches per room. The plaintiffs did not recall that statement by the defendant, but recalled him saying that he would build them a house exactly like the one he had shown them. The evidence is that the house shown was approximately $13–$15,000.00 more than the contract price of the home that was built.

The most obvious indication of the different expectations of the parties occurred when the plaintiffs returned from Florida to examine the partially constructed house. They found that the floor plan had been reversed, and what appeared on the right side of the attachment was now on the left side and vice versa. This was done, according to the defendant's testimony, to avoid a storm sewer easement and also because the plaintiffs had instructed the defendant to "save particularly that big oak tree" (Tr. 173) The plaintiffs did not recall that statement, but recalled the defendant telling them the house to be built for them and the house they had looked at "would be identical" (Tr. 133). During this and a subsequent visit, the plaintiffs also noted: the house was not as roomy as their house in Florida, the bedrooms were too small, the garage was too small to accomodate their automobile, the shower was too small to accomodate Mr. Wintrow and the partially completed house lacked other features expected by the plaintiffs (Tr. 122–125).

At a minimum, an issue of breach of contract was present at that time; however, without signing any other documents, the parties reached an agreement under the terms of which the defendant was to make certain modifications, which he did. The plaintiff eliminated one of the bedrooms in the house and enlarged the other bedroom and added a closet. He also enlarged the shower and the garage. Further, although the written contract did not require any additional payment from the plaintiffs until completion, the plaintiffs advanced the sum of $10,000.00 to the defendant.

At a subsequent visit when the plaintiffs saw that the gables on the house were aluminum and had been "pounded to death" (Tr. 128) and not the brick they had expected, they demanded the return of all funds paid to the defendant. The defendant did not return the funds and subsequently the state court litigation was commenced.

### CONCLUSIONS OF LAW

■ The law governing exceptions to discharge under §§ 523(a)(2)(A) (fraud) and (a)(6) (malicious injury) places a heavy burden of proof on the plaintiff and exceptions to discharge are to construed narrowly against the exception and in favor of granting the discharge.

The United States Supreme Court stated in *Ames v. Moir*, 138 U.S. 306, 11 S.Ct. 311,

34 L.Ed. 951 (1891) that the fraud which is not dischargeable by a bankrupt is "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong ... and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Id.* at 311, 11 S.Ct. at 312–13 (quoting *Neal v. Clark,* 5 Otto 704, 709, 95 U.S. 704, 709, 24 L.Ed. 586 (1877)). *See also Craycraft v. Adams (In re Adams),* 9 B.C.D. 318, (Bankr.N.D.Oh.1982).

The position of the Sixth Circuit appears in *In re Martin,* 761 F.2d at 1165: "The party seeking an exception from discharge under section 523(a)(2) has the burden of proof by clear and convincing evidence *E.g., In re Forester,* 28 B.R. 249, 250–51 (Bankr.W.D.Mo.1983); *In re Jones,* 3 B.R. 410, 412 (Bankr.W.D.Va.1980)." *See also In re D'Annolfo,* 13 B.C.D. 976 and cases collected therein at 977.

Similarly, the Court of Appeals for the Tenth Circuit recently stated:

[I]t is appropriate to consider the legislative history of § 523(a)(6) of the Code to determine how Congress intended "willful and malicious" as used in that provision to be interpreted.

. . . .

"In the legislative history accompanying the Bankruptcy Act of 1978, Congress made it unmistakeable that only deliberate and intentional acts should be considered 'willful,' and that mere reckless disregard did not qualify."

*In re Kasler,* 611 F.2d 308, 310 n. 7 (9th Cir.1979); *see* 3 Collier on Bankruptcy ¶ 523–16, at 523–132 to –133 (15th ed. 1979).

. . . .

In short, it was the express intent of Congress to define "willful" for purposes of § 523(a)(6) to mean "deliberate or intentional".

*Farmers Insurance Group v. Compos (In re Compos),* 768 F.2d 1155, 1157–58 (10th Cir.1985).

Further, "exceptions to discharge must be narrowly construed" *Bank One of Wapakoneta, NA. v. Huffman (In re Huff-man),* 45 B.R. 590, 595 (Bankr.N.D.Oh. 1984) (quoting *Waterbury Community Federal Credit Union v. Magnusson) (In re Magnusson),* 14 B.R. 662, 667 (Bankr.N. D.N.Y.1981). *See also The Tappan Company v. Klusman (In re Klusman),* 29 B.R. 865 (Bankr.S.D.Oh.1983).

## RESOLUTION OF DISCHARGEABILITY ISSUE

■ In order to establish their claims, the plaintiffs must prove against the defendant by clear and convincing evidence every element of falsity or fraud under 11 U.S.C. § 523(a)(2)(A); or, must prove that the defendant deliberately or intentionally caused injury to them or their property in violation of 11 U.S.C. § 523(a)(6).

Applying the law to the facts of this case, it is apparent that while the defendant obviously did not build the house the plaintiffs expected, the defendant's actions took place not only with disclosure to the plaintiffs, but with the active cooperation of the plaintiffs. Further, when it became clear that the plaintiffs were not receiving what they had expected, rather than stop the process and request a return of their money, the plaintiffs advanced additional amounts, not called for by the parties' contract, to obtain services which the plaintiff performed according to the parties' agreement at that time. Were this merely an action requesting that this court determine the rights and obligations of the parties arising out of their contract and conduct, a variety of results and remedies might be available; however, such is not the case. It is the obligation of this court to determine under bankruptcy law standards whether the evidence presented by the plaintiff clearly convinces the court that the defendant was guilty of falsity or fraud or that he intentionally and deliberately caused injury. On the basis of the evidence presented and the applicable law, such a conclusion cannot be reached.

Accordingly, the court holds that the plaintiffs have not established that the debt

due them from the defendant is an exception to discharge and the debt due Carlton E. and Arlene Z. Shafer, from William R. Wintrow, Jr. is discharged.

An order in accordance with this decision is entered herewith.

SO ORDERED.