**In re Arthur SUYDAM, III, Debtor.**

**ITT FINANCIAL SERVICES, Plaintiff,**

v.

**Arthur SUYDAM, III, Defendant.**

**Bankruptcy No. 91–3364.**
**Related No. 91–31183.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 28, 1992.

John C. Intagliata, Toledo, OH, for plaintiff.

William Scott O'Brien, Findlay, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court on Plaintiff's Complaint to Determine Dischargeability of Debt and/or Complaint to Object to Discharge and Defendant's Answer and Motion for Fees. A trial was held where the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the arguments of counsel, exhibits, relevant statutory and case law, as well as the entire record. Based upon that review, and for the following reasons, the Court finds that Defendant should return to Plaintiff the Mossberg Gun and stereo equipment. Plaintiff is granted judgment against Defendant for Three Thousand Nine Hundred Twenty Four and 89/100 Dollars ($3,924.89) to be offset by any amount recouped from Defendant's return of the stereo equipment and Mossberg Gun. The resultant amount is Nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

## FACTS

Defendant is Twenty-five (25) years of age and has been employed at Hancorp since 1986. Plaintiff approved the first of three cash advances to Defendant on March 1, 1988. Initially, Plaintiff approved an advance totalling One Thousand Nine Hundred Three and 22/100 Dollars ($1,903.22). In return, Defendant granted Plaintiff a security interest in the following items of property: Pentax Camera and Wide Angle Lens; Roper Snowblower; Camping Equipment; Zenith 13″ Color Television Set; Panasonic VCR; Ibanez Electric Guitar; B and D Power Saw; Panasonic Stereo; Mossberg Gun; H and R 12 Gauge Gun; Black and Decker Power Saw; and Stereo System. The value of the collateral recorded on the security agreement is Two Thousand Eight Hundred and 00/100 Dollars ($2,800.00).

Defendant received two additional cash advances totalling Four Hundred and 00/100 Dollars ($400.00) and Eight Hundred and 00/100 Dollars ($800.00) on April 6, 1988 and July 21, 1988 respectively. Defendant refinanced the sum of Two Thousand One Hundred Nine and 00/100 Dollars ($2,109.00) on July 21, 1988. Defendant's wife, Tina Suydum, was never a party to Defendant's contractual obligations with Plaintiff, however, on July 21, 1988, she did sign the security agreement.

The collateral pledged as security for the initial loan was used for every cash advance and refinancing thereafter. According to Defendant, when he filed for divorce on December 10, 1988, Mrs. Suydum absconded, taking some of the collateral, namely the television set, VCR and snowblower. Before departing, Mrs. Suydum destroyed the stereo. The stereo, television set, VCR and snowblower were all collateral securing Defendant's loan with Plaintiff.

On February 18, 1989, Defendant was awarded a divorce from Mrs. Suydum. By agreement of the parties, Mrs. Suydum was awarded a waterbed and microwave. The parties acknowledged that the remaining property, including household goods and furnishings, had been divided prior to signing the Separation Agreement. Defendant was ordered to pay the indebtedness to Plaintiff totalling Five Thousand Five Hundred Thirty and 96/100 Dollars ($5,530.96).

Plaintiff approved its final loan to Defendant on April 18, 1989. The collateral was again used to refinance all previous loans.

Defendant did not advise Plaintiff that some of the collateral had been destroyed or taken by his spouse. Without examination, Defendant signed the new promissory note and security agreement, retaining Plaintiff's interest in the initial list of collateral.

On March 26, 1991, Defendant filed for Bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. Defendant claimed that his debt to Plaintiff at the time of filing totalled Four Thousand Five Hundred Fifty Eight and 00/100 Dollars ($4,558.00). On August 22, 1991, Defendant's counsel wrote Plaintiff's counsel, advising that Mrs. Suydum had taken the snowblower, stereo, television set and VCR. The letter also states that Defendant is in possession of the Mossberg Gun and stereo equipment. The stereo equipment is inoperable. The camping equipment, camera, camera lens, guitar and tools, were either sold or discarded. On September 4, 1991, Plaintiff filed a Complaint to Determine Dischargeability of Defendant's debt. Defendant filed an Answer and Motion for Fees on September 18, 1991.

## LAW

11 U.S.C. § 523, Exceptions to discharge, reads in part as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 727(a)(5) reads as follows:

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

## DISCUSSION

The issue before this Court is the dischargeability of a loan which consolidated prior loans made by Plaintiff to Defendant on April 18, 1989. Plaintiff's argument that Defendant's debt is nondischargeable is threefold. First, Defendant sold some of the collateral without Plaintiff's consent. These acts violate the terms of the security agreement and deprived Plaintiff of its remedy in the event of default by Defendant. Second, Defendant permitted his spouse to convert the collateral without Plaintiff's consent. This too, is in violation of the security agreement. Third, Defendant fraudulently and erroneously represented that the collateral was free and clear of any liens. As a consequence of Defendant's acts, Plaintiff has suffered a loss of Three Thousand Nine Hundred Twenty Four and 89/100 Dollars ($3,924.89).

In response, Defendant argues that he did not wrongfully convert or destroy the collateral in question; his spouse did. During the marriage, Mrs. Suydum destroyed much of the marital property, including the collateral. After Mrs. Suydum vacated the marital premises, Defendant was not inclined to pursue either her or the return of the collateral.

I. *DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A).*

Section 523(a)(2)(A) precludes discharge under Section 727 for refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition. To succeed under this section, Plaintiff must prove that Defendant obtained refinancing by false pretenses, a false representation or actual fraud.

At issue in this case is Defendant's representation concerning the collateral when he obtained refinancing on April 18, 1989. Since Plaintiff has not raised the issue, Defendant's initial representation regarding the collateral is deemed true. Defendant's initial representation became

false, however, when Defendant obtained refinancing on April 18, 1989. On that date, Defendant obtained refinancing based upon his representation to Plaintiff that the collateral, initially pledged, remained intact. He failed to divulge to Plaintiff that approximately four (4) months prior, the snowblower, television set, VCR and stereo had been appropriated by his spouse. He also failed to divulge to Plaintiff that the camera, camera lens, camping equipment, guitar and power tools had been either sold or destroyed.

Plaintiff had the burden of proving that Defendant made a false representation respecting the collateral so that he can obtain refinancing. Plaintiff sustained that burden. In his defense, Defendant asserts two arguments. One, he failed to read the security agreement before signing. Two, his wife deprived him of the collateral by either destroying or converting it. This Court finds Defendant's excuses implausible for at least two reasons. First, Defendant is not a novice in making loan agreements. He had undergone the loan application procedure on at least three prior occasions. Each time he executed a security agreement pledging the same collateral. There is no question that by the fourth time he made application, Defendant knew or should have known the importance of maintaining the collateral in good repair; and refraining from transference of the collateral. Second, it is immaterial that Defendant's wife deprived him of collateral or that he failed to read the security agreement before signing. The crux of this controversy is that Defendant never advised Plaintiff that his spouse had converted or destroyed the collateral before he entered into the agreement with Plaintiff on April 18, 1989.

Based upon the evidence presented, this Court can reach but one conclusion: Defendant permitted Plaintiff to rely upon his false representation regarding the collateral so that he could obtain refinancing. Pursuant to Section 523(a)(2)(A), Defendant's debt to Plaintiff should not be discharged.

## II. DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6).

Plaintiff also argues that Defendant's debt is nondischargeable under 11 U.S.C. § 523(a)(6). To succeed under 11 U.S.C. § 523(a)(6), Plaintiff must prove that the injury to the property was the result of Defendant's willful and malicious acts. The terms "willful and malicious" are not defined by statute, however they are defined in *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987) *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 "as a wrongful act done intentionally and without just cause, which necessarily leads to injury." A specific intent to do harm is not necessary. *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986). "Willful and malicious" do not mean reckless disregard or mere negligence. *In re Compos*, 768 F.2d 1155, 1157 (10th Cir.1985). The standard of proof to be applied in determining dischargeability under Section 523(a)(6) is clear and convincing evidence. *In the Matter of Wintrow*, 57 B.R. 695 (Bankr. S.D.Ohio 1986).

This Court must determine if Plaintiff has established by clear and convincing evidence that Defendant willfully and maliciously caused injury to the collateral which secured Defendant's loan with Plaintiff. In this case there are three operative events that constitute willful and malicious injury by Defendant to the collateral. First, Defendant sold the camera, camera lens and guitar without Plaintiff's consent. Second, the stereo equipment, camping equipment and tools were discarded without Plaintiff's consent. Third, when he filed for divorce in December, 1988, he permitted his spouse to take the stereo, television set, VCR, and snowblower. All of those items discarded, transferred or sold were pledged as collateral for the loan to Plaintiff.

Plaintiff has proven by clear and convincing evidence that the resultant injury to the collateral emanated from Defendant's wrongful and intentional acts. Undoubtedly, the sale of collateral is an intentional act. Defendant's pretext for the resultant injury to the collateral by his spouse, how-

ever, focuses upon the tumultuous nature of the marital relationship. This Court finds that Defendant's excuses do not constitute "good cause." Although he clearly wanted to avoid contact with Mrs. Suydum, Defendant erred when he failed to obtain legal title to the collateral in the Separation Agreement. In fact, he represented to the Court, under oath, that the marital property had been divided. Clearly, despite Defendant's disdain for Mrs. Suydum, he intended for her to maintain the collateral in her possession.

In addition, this Court resorts to its previous finding. Defendant had obtained three previous cash advances and he knew or should have known that the collateral was not subject to unilateral transfer or disposal. The injury to the collateral was a result of Defendant's intentional wrongful acts. Therefore, Defendant's debt to Plaintiff is similarly Nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

On the date that Defendant filed a petition for relief under Chapter 7, the balance due Plaintiff totalled Three Thousand Nine Hundred Twenty Four and 89/100 Dollars ($3,924.89). Defendant shall return to Plaintiff those items of collateral in his possession, namely the Mossberg Gun and stereo equipment. Plaintiff is granted a judgment against Defendant in the amount of Three Thousand Nine Hundred Twenty Four and 89/100 Dollars ($3,924.89), offset by any amount recouped from the Mossberg Gun and stereo equipment.

In reaching these conclusions, this Court has considered the demeanor of all witnesses, all evidence, and all arguments of counsel regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that Defendant return to Plaintiff the Mossberg Gun and stereo equipment within five (5) days after issuance of this Order.

It is further ORDERED that Plaintiff is granted judgment against Defendant for Three Thousand Nine Hundred Twenty Four and 89/100 Dollars ($3,924.89) to be offset by any amount recouped by Defendant's return of the Mossberg Gun and stereo equipment.

It is further ORDERED that Plaintiff's judgment against Defendant for Three Thousand Nine Hundred Twenty Four and 89/100 Dollars ($3,924.89) is NONDISCHARGEABLE under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).