In re Miles Clifford LEWIS, Debtor.

COMMUNICATION FEDERAL CREDIT UNION, a Corporation, formerly Pioneer Federal Credit Union, a Corporation, Plaintiff,

v.

Miles Clifford LEWIS, Defendant.

Bankruptcy No. BK–82–01345.
Adv. No. 82–0378.

United States Bankruptcy Court,
W.D. Oklahoma.

June 28, 1983.

Ed Carrier, Oklahoma City, Okl., for plaintiff.

Steven E. Ferguson, Oklahoma City, Okl., for debtor-defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

This matter comes on before the Court on the complaint of Communication Federal Credit Union ("Communication Credit") for a determination that its claim against the debtor is nondischargeable under 11 U.S.C. § 523(a)(6). A trial was held and the parties submitted proposed findings of fact and conclusions of law.

Communication Credit is the successor corporation to Pioneer Bell Federal Credit Union ("Pioneer Bell"). Sometime in February, 1981, Bonnie Cooper ("Cooper") obtained a loan from Pioneer Bell and pursuant thereto was advanced the sum of five thousand one hundred dollars ($5100.00) in the form of a cashier's check payable to Cooper, Miles Lewis ("Debtor") and Dairyman's Credit Union. The check was to enable Cooper to purchase Debtor's 1978 Cadillac Fleetwood automobile. Cooper had agreed with Debtor on a purchase price of seven thousand eight hundred dollars ($7800.00). According to the deposition of Cooper, admitted into evidence, in addition to the check issued by Pioneer Bell, Cooper paid Debtor one thousand dollars ($1000.00) in cash, leaving a balance owed Debtor of one thousand seven hundred dollars ($1700.00). The check issued by Pioneer Bell was endorsed by all the parties. Dairyman's Credit Union was listed as a payable party owing to its lien on Debtor's vehicle, the vehicle in question. This lien was released and subsequently, the title on said vehicle was transferred to Cooper by Debtor. A lien entry form was prepared by Pioneer Bell and the lien was entered by a motor vehicle license agent on May 6, 1981, thereby perfecting the security interest of Pioneer Bell.

Sometime around the end of April, 1981, the vehicle was stolen from Cooper. Debtor was contacted by the authorities that they had the vehicle in their possession. Debtor was notified because the Oklahoma Tax Commission still showed title to the vehicle in Debtor's name. Thereafter, Debtor proceeded to obtain a duplicate title to the vehicle and had the vehicle removed to his home.

Subsequently, Debtor sold the vehicle to Executive Kars, Inc., for the sum of three thousand dollars ($3000.00) on May 13, 1981. Thereafter, Executive Kars sold the vehicle for the sum of four thousand four hundred twenty seven dollars and fifty cents ($4,427.50).

Communication Credit submits that the actions of the debtor fall within 11 U.S.C. § 523(a)(6) and therefore the debt should be declared nondischargeable and that Communication Credit is entitled to a judgment against the Debtor in the amount of four thousand four hundred twenty seven dollars and fifty cents ($4,427.50) plus interest, attorney fees in the amount of one thousand five hundred dollars ($1500.00) and costs.

## CONCLUSIONS OF LAW

The question before the Court is whether the debtor "willfully and maliciously" converted the property of the plaintiff, thereby rendering the debt nondischargeable under 11 U.S.C. § 523(a)(6).

Section 523(a)(6) provides in pertinent part:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt ...

\*     \*     \*     \*     \*     \*

(6) For malicious and willful injury by the debtor to another entity or to the property of another entity.

In *Tinker v. Colwell*, 193 U.S. 473, 487, 24 S.Ct. 505, 509, 48 L.Ed. 754 (1902), the Supreme Court, interpreting the parallel provision to § 523(a)(6)—§ 17a(2) of the Act, determined that "a specific intention to hurt a particular person" was not an essential element of the term "malicious". The Court reasoned:

[W]e think a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.

193 U.S. at 487, 24 S.Ct. at 509.

The language used by Congress in § 523(a)(6) is almost identical to that before the Court in *Tinker v. Colwell, supra.* Nevertheless, the Committee Reports of the United States House of Representatives and Senate provide:

Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1979); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5865, 6320–21.

[T]he conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception. On the other hand; a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge.

3 *Collier on Bankruptcy,* paragraph 523.16 at 523–120–21 (15th ed. 1979) (footnotes omitted).

The court in *In re De Rosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y.1982), in a well-reasoned opinion stated:

Ever since Mr. Tinker tinkered with Mrs. Colwell at the turn of the century, as the eminent Professor Countryman so artfully phrased it, bankruptcy courts have

sought to judge the degree of culpability and after seventy-five years have not come up with a better definition than *Collier's* quotation [3 *Collier on Bankruptcy*, para. 523.16, *supra*]. No wonder Congress has not attempted to define willful and malicious anymore than it has defined "alimony" or "in the nature of alimony", "set-off", "adequate assurance", "adequate protection" or "other professional persons", either accepting established case law or leaving the definition to future decisions.

It may be that future Bankruptcy Judges may establish a new and novel norm for "willful and malicious" and a different list of dischargeable conduct. If "intent to harm" is to play a greater part, then conflict will be greatly narrowed and a departure from the old concept will be attained. To the writer, it is more a matter of guilty knowledge or wrongdoing.

*Id.* at 313, *quoting In re McGiboney*, 8 B.R. 987, 989 (Bkrtcy.N.D.Ala.1981).

■ An act of conversion, done deliberately and intentionally, in knowing disregard of the rights of another, falls within the statutory exclusion even though there may be an absence of special malice. Personal hatred, spite or ill will are not required in order to find a willful and malicious injury. *In re Greer*, 21 B.R. 763 (Bkrtcy.D.Ariz.1982); *In re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn.1980). The looser *Tinker* common law definition of implied or constructive malice, rather than the rigid standard of actual, subjective, conscious intent to harm is the standard adopted by this Court. *See, In re Clark,* 30 B.R. 685 (Bkrtcy.Okl.1983).

■ In a determination of dischargeability under § 523(a)(6), it is important that a careful analysis be made of the facts of each particular case and the degree of culpability, if any, which may be involved. It is vital to look to the particular circumstances of each case, each with their own legal subtleties and nuances, in determining the presence or absence of maliciousness, keeping in mind at all times the recognized

purpose of the Bankruptcy Code to provide a "fresh start" for the honest debtor. As we have previously stated, it is not necessary to make a finding that hatred, ill will or spite existed. A requirement that such a finding be made would vitiate § 523(a)(6) to the point of meaninglessness in most instances while at the same time place an insurmountable burden on a creditor objecting to discharge under this section. This result would act as a strong deterrent against the free flow of funds in an already depressed lending and borrowing market. A lender, faced with the prospect of such a result, would doubtless be extremely reluctant to advance funds if it were probable that such funds could so easily be misapplied by borrowers without any remedy to the lenders.

■ In light of the above, we conclude that Debtor willfully and maliciously converted the vehicle in question.

At the trial, Debtor testified that he was not aware of the lien in favor of Pioneer Bell and that, at the time of transfer of title, the lien did not appear when he signed the title. Debtor further testified that he was informed by Cooper that Cooper was obtaining the funds with which to purchase Debtor's vehicle from her credit union, although the credit union was not mentioned by name. There was no dispute as to Debtor's endorsing the check issued by Pioneer Bell. This Court has no problem with concluding that Debtor was aware of the lien of Pioneer Bell. Debtor was aware of the procedures involved with borrowing funds from a credit union. We may assume that much from the fact that Debtor's credit union was one of the parties entitled to payment from the check issued by Pioneer Bell, thereby evidencing that Debtor at one time had borrowed from a credit union and was therefore aware of the procedures involved when a credit union loans funds for the purpose of purchasing an automobile. Whether the debtor knew the exact name of the credit union which held a lien on the vehicle in question is immaterial. In light of our conclusion that debtor was familiar with the procedures utilized by a credit

union, or any lending institution for that matter, when loaning funds for the purpose of purchasing an automobile, we are of the opinion that Debtor possessed, at a minimum, constructive knowledge that a lien in favor of Pioneer Bell existed. When Debtor sold the vehicle in question to Executive Kars, he committed a willful and malicious injury "[t]o the property of another entity."

The testimony of Debtor was that he resold the vehicle to Executive Kars for the sum of three thousand dollars ($3000.00). Executive Kars subsequently sold the car for four thousand four hundred twenty-seven dollars and fifty cents ($4,427.50). It is this latter sum which Communication Credit seeks to have imposed as the amount of conversion. There was no testimony as to the actual value of the vehicle. In the absence thereof, we find Debtor liable for conversion in the amount of three thousand dollars ($3000.00). We will not find him liable for failing to obtain a better price.

The final matter before the Court is the request of Communication Credit that it be awarded attorney fees in the amount of one thousand five hundred dollars ($1500.00) together with the costs of maintaining this action.

 This Court has only recently passed on the issue of attorney fees and costs insofar as whether they should be awarded to a creditor who seeks to have a debt declared nondischargeable. *See, In re Lynch,* BK–82–2118, Adv. 83–0005 (11 U.S.C. § 523(d) does not provide a statutory basis for the imposition of attorney fees against the debtor). Following the reasoning of *Lynch,* Communication Credit's request for attorney fees and costs is therefore denied.

Based on the above findings of fact and conclusions of law, it is the opinion of this Court that the debtor, Miles C. Lewis, committed willful and malicious conversion in the amount of three thousand dollars ($3000.00) so as to prevent the discharge of this amount under § 523(a)(6). Communication Credit is therefore entitled to judgment in the amount of three thousand dollars ($3000.00) plus interest at the rate of 12% per annum from the date of conversion (May 13, 1981), to the date of judgment and interest at 9.59% per annum from date of judgment until paid. Communication Credit's request for attorney fees and costs is denied.

IT IS SO ORDERED.

Pursuant to B.R. 752 this Memorandum Opinion constitutes the findings of fact and conclusions of law.

An appropriate judgment will be entered.