In re Sue CONTENTO, Debtor.

BENEFICIAL FINANCE CO. OF NEW YORK, INC., Plaintiff,

v.

Sue CONTENTO, Defendant.

Bankruptcy No. 83 B 20336.
83 Adv. 6189.

United States Bankruptcy Court,
S.D. New York.

March 7, 1984.

Law Clinics of S. Simpson Gray, P.C., Mount Vernon, N.Y., for Sue Contento.

Jeffrey L. Sapir, Yonkers, N.Y., for Beneficial Finance Co. of N.Y., Inc.

DECISION ON APPLICATION TO HAVE DEBT OF BENEFICIAL FINANCE CO. OF NEW YORK, INC., DECLARED NONDISCHARGEABLE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Beneficial Finance Co. of New York, Inc. ("Beneficial") has filed a complaint objecting to the dischargeability of the debt owed to it by the debtor, Sue Contento, on the ground that it is nondischargeable under 11 U.S.C. § 523(a)(6) because of the debtor's conversion of insurance proceeds paid upon the theft of an automobile pledged as collateral for Beneficial's loan to the debtor.

FINDINGS OF FACT

1. On June 24, 1983 the debtor filed with this court her petition for relief under Chapter 13 of the Bankruptcy Code. On November 22, 1983 an order was entered converting the case for liquidation under Chapter 7 of the Code.

2. The plaintiff, Beneficial, is a creditor of the debtor as a result of a collateralized loan that was made to the debtor on July 22, 1981, evidenced by a note which she signed in the amount of $6407.42. As security for the loan, the debtor pledged her 1975 Lincoln automobile. The vehicle was insured by Government Employees Insurance Company (GEICO). Beneficial was named as a loss payee along with the debtor in the event of any loss.

3. In late November, 1981 the debtor's 1975 Lincoln was stolen. On January 12, 1982, GEICO issued its check in the sum of $3538.00 payable to the debtor and to Beneficial.

4. On January 14, 1982, the debtor endorsed the insurance check and negotiated it without the endorsement of Beneficial. She used part of the money to rent another vehicle and the balance was used in her business.

5. Beneficial's representative did not learn of the fact that the automobile was stolen or that an insurance check was issued to the debtor until approximately January 27, 1982, when its representative checked

with the Motor Vehicle Bureau in anticipation of taking action against the collateral. At that time it was learned that GEICO was the owner. Beneficial's representative then called GEICO and learned that GEICO had issued an insurance check to the debtor because the automobile had been stolen. Beneficial's representative then contacted the debtor who said that she had cashed the check in order to rent another vehicle and to pay for the cost of repairs made with respect to the stolen 1975 Lincoln. Beneficial's representative advised the debtor to continue making payments on her outstanding indebtedness to Beneficial.

6. The debtor maintains that she informed Beneficial before she negotiated the check for the insurance proceeds that she needed the money in order to rent a replacement vehicle and that Beneficial's representative agreed she could keep the proceeds as long as she continued making payments under the loan. It is questionable that the debtor informed Beneficial before she negotiated the check, since if Beneficial agreed to allow the debtor to keep the proceeds it would have also endorsed the check. However, the depositary collecting bank honored the check without requiring Beneficial's additional endorsement, notwithstanding that the check was made payable to the debtor and Beneficial. Moreover, if Beneficial knew that the pledged automobile had been stolen and that GEICO had issued a check to the debtor for the loss, there would have been no need for Beneficial's representative to contact the Motor Vehicle Bureau and GEICO in order to get information about the vehicle. Apparently, the debtor misunderstood Beneficial's request for continued payments under the loan as a ratification of what she had already done, namely negotiation of the insurance check and use of the proceeds for her own purposes.

7. The debtor thereafter offered to pledge another vehicle with Beneficial as collateral for the loan, as did her husband. For various reasons Beneficial rejected the proposed pledges.

8. By converting the insurance proceeds covering encumbered property the debtor deliberately acted in the knowledge that such conduct would harm Beneficial's interest in the insurance proceeds. This conduct constitutes a willful and malicious injury to Beneficial's property rights.

9. There is presently due and owing to Beneficial under the original loan to the debtor the sum of $4855.42.

## DISCUSSION

The debtor argues that her negotiation of an insurance company check that was made payable to both herself and the plaintiff, Beneficial, and her use of the proceeds to purchase another automobile after her original vehicle (which had served as collateral for a loan to her from the plaintiff) had been stolen, did not constitute a willful and malicious injury under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code. This position is based upon the theory that a "malicious injury" within the meaning of Code § 523(a)(6) requires an actual conscious intent to cause harm to the creditor or to the creditor's property. In other words, the debtor maintains that proof of constructive or implied malice is insufficient to establish a "malicious injury."

Code § 523(a)(6) excludes from discharge any debts which are liabilities "for willful and malicious injury by the debtor to another entity or to the property of another entity." This language tracks the comparable provision in § 17(a)(8) of the former Bankruptcy Act, except that § 17(a)(8) expressly excluded conversion of property because this point was separately covered in § 17(a)(2), which, in addition to proscribing liabilities founded on fraud and false representations, also excluded from discharge any liabilities "for willful and malicious conversion of the property of another." Although there is no specific reference in Code § 523(a)(6) to the term conversion, the courts have interpreted this section to embrace the conversion of property so that a conversion is treated under this section as an injury to property for purposes of nondischargeability. *See United Bank of*

*Southgate v. Nelson,* 35 B.R. 766, 11 B.C.D. 159 (D.C.N.D.Ill.1983); *Communication Federal Credit Union v. Lewis,* 31 B.R. 83 (Bkrtcy.W.D.Okla.1983); *Car Village Buick-Opel, Inc. v. De Rosa,* 20 B.R. 307 (Bkrtcy.S. D.N.Y.1982). The key words are "willful and malicious," because as noted in *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), every act of conversion is not necessarily "willful and malicious," because "[t]here may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Id.* at 332, 55 S.Ct. at 153 (citations omitted). Hence the twin elements of willfulness and malice must be established before a liability founded on conversion may be declared to be nondischargeable.

The debtor reasons that proof of implied malice is no longer sufficient to establish the prerequisite of malice under Code § 523(a)(6) because of the comment in the legislative history which states:

Under this paragraph "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* [193] U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a less strict[1] standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865, 6320–21.

Indeed, some early Code cases in the bankruptcy courts did interpret Code § 523(a)(6) to require proof of more than reckless conduct and implied malice short of actual intent to do harm in order to satisfy the two elements of willfulness and malice. *Grand Piano & Furniture Co. v. Hodges,* 4 B.R. 513, 6 B.C.D. 531 (Bkrtcy.W.D.Va. 1980); *Liberty National Bank & Trust Co. v. Hawkins,* 6 B.R. 97, 6 B.C.D. 1054 (Bkrtcy.W.D.Ky.1980); *General Electric Credit Corp. v. Graham,* 7 B.R. 5, 6 B.C.D. 539 (Bkrtcy.D.Nev.1980); *In re Hinkle,* 9 B.R. 283 (Bkrtcy.D.Md.1981); *First Nation-*

al *Bank of Atlanta v. McLaughlin,* 14 B.R. 773 (Bkrtcy.N.D.Ga.1981). However, subsequent district courts and bankruptcy courts have concluded that the "reckless disregard" standard which the *Tinker* case permitted to satisfy the element of "willfulness" was overruled but that *Tinker's* malice holding was not overruled and that proof of implied malice may satisfy the malice requirement in Code § 523(a)(6). *United Bank of Southgate v. Nelson,* 35 B.R. 766, 772–73, 11 B.C.D. 159, 165–66 (D.C.N.D.Ill.1983); *United Virginia Bank v. Fussell,* 15 B.R. 1016, 1022–23 (W.D.Va. 1981); *Communications Federal Credit Union v. Lewis,* 31 B.R. 83, 86 (Bkrtcy.W.D. Okl.1983); *Ford Motor Credit Co. v. Klix,* 23 B.R. 187, 189–90 (Bkrtcy.E.D.Mich.1982); *Car Village Buick-Opel, Inc. v. De Rosa,* 20 B.R. 307, 313 (Bkrtcy.S.D.N.Y.1982); *Pioneer Bank & Trust Co. v. Scotella,* 18 B.R. 975, 977, 8 B.C.D. 1282, 1283 (Bkrtcy.N.D.Ill. 1982). Judge Berk in this district succinctly stated the rule as to constructive malice as follows:

Intent to harm or injure is not required. Intent to do the wrongful act is sufficient and that constitutes the willful part of the act.

*Car Village Buick-Opel, Inc. v. De Rosa,* 20 B.R. at 313. Similarly, in *Gafni v. Barton,* 465 F.Supp. 918, 924 (S.D.N.Y.1979), then Chief Judge Edelstein said:

The words "willful and malicious" do not import any sense of spite, hatred, or ill will—"special malice"—but only mandate that the questioned act be done " 'deliberately and intentionally in knowing disregard of the rights of another.'" *In re Nance,* 556 F.2d 602, 611 (1st Cir.1977), *quoting Bennett v. W.T. Grant Co.,* 481 F.2d 664, 665 (4th Cir.1973).

In a somewhat similar setting, the debtor in *In re Lewis,* 31 B.R. 83, was aware that a credit union had a lien on his automobile which he had sold to another. However, the automobile was mistakenly returned to the debtor after it had been stolen. The debtor then sold the vehicle to a third party

---

**1.** The House Report describes the standard as "looser" rather than "less strict."

despite his knowledge of the lien. In holding that when the debtor sold the vehicle to the third party he committed a willful and malicious injury to the property of another entity, the court said:

> An act of conversion, done deliberately and intentionally, in knowing disregard of the rights of another, falls within the statutory exclusion even though there may be an absence of special malice. Personal hatred, spite or ill will are not required in order to find a willful and malicious injury.

*Id.* at 86.

In the instant case, the debtor knew that her automobile had been pledged to Beneficial as collateral for its loan to her. The debtor also was aware that Beneficial was named as a loss payee, along with herself, in the event that the insurance company was required to make good in case of loss or theft. Moreover, the debtor was aware that the check issued by the insurance company following the theft of her automobile was made payable to both herself and Beneficial as loss payees, pursuant to the collateralized loan transaction. Nevertheless, she disregarded Beneficial's interest in the proceeds of the insurance check and somehow managed to cash the check without obtaining Beneficial's endorsement. She then applied the proceeds to the purchase of another automobile, free and clear of Beneficial's lien. These facts do not bespeak of a technical or innocent conversion or an honest mistake. Beneficial has shown by clear and convincing evidence that the debtor intentionally and without justification, in knowing disregard of Beneficial's property rights, converted the proceeds of a check requiring Beneficial's endorsement. Beneficial's lien on the vehicle that was stolen was not transferred to the other vehicle purchased by the debtor, all to Beneficial's detriment. Such conduct was proscribed by the Supreme Court in *Tinker v. Colwell,* as follows:

> [W]e think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be

said to be done wilfully and maliciously, so as to come within the exception.

193 U.S. 473, 487, 24 S.Ct. 505, 509, 48 L.Ed. 754 (1902).

## CONCLUSIONS OF LAW

1. The plaintiff has clearly and convincingly established that the debtor willfully and maliciously converted the proceeds from a check made payable to both the debtor and the plaintiff and that as a result of such conversion the plaintiff's lien on the debtor's stolen automobile that had been pledged by the debtor as collateral for the plaintiff's loan was neither satisfied nor replaced when the debtor purchased another vehicle free and clear of the plaintiff's lien.

2. Such conduct gave rise to a liability to the plaintiff as a result of the debtor's willful and malicious injury to the plaintiff's property to the extent of the amount of the check, namely $3,538.00.

3. The plaintiff is entitled to an order declaring that the debtor's conversion of the proceeds of the insurance check in the sum of $3,538.00 constitutes a nondischargeable debt within the meaning of Code § 523(a)(6).

SUBMIT ORDER on notice.