In re Wilfred H. WATKINS, Robert Watkins and Sharon Watkins, Debtor.

**BORG–WARNER ACCEPTANCE CORPORATION, Plaintiff,**

v.

**Wilfred H. WATKINS, Sharon Watkins, Robert Watkins and Sharon Watkins, Defendants.**

Bankruptcy Nos. 87–09770, 87–09771. Adv. Nos. 88–9020, 88–9021.

United States Bankruptcy Court, E.D. Michigan, N.D.

Sept. 19, 1988.

Webster C. Tally, Bay City, Mich., for plaintiff.

John Wesley Kline, Southfield, Mich., for defendants.

## Memorandum Opinion Re: Standard of Proof In § 523(a)(6) Actions

ARTHUR J. SPECTOR, Bankruptcy Judge.

This matter is before the Court upon the plaintiff-creditor's complaint to have its claim declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6). After a trial on the merits, the plaintiff has established by a preponderance of the evidence, but not by clear and convincing evidence, that this debt is one for willful and malicious injury by the defendant-debtors to property of the plaintiff. Herein lies the problem.

### FACTS

The defendants operated a marina and also sold boats and boating equipment. The plaintiff loaned money to the defendants under a floor-plan financing agreement[1] which obligated the defendants to repay the plaintiff as each item on the floor-plan is sold. The complaint alleges that the defendants intentionally sold two boats and three pontoons "out of trust", i.e., title had been conveyed but the plaintiff had not been paid.

At trial, the plaintiff presented the testimony of one witness to support its claim that the out-of-trust sales were intentional acts. The witness, an investigator for a *different,* floor-plan financer[2] testified that her audit of the defendants' inventory on February 23, 1987 revealed that 10 boxes, each of which were supposed to contain an unsold engine, instead were either empty altogether or filled with wood and assorted junk such that the sealed boxes appeared as if they each contained an unsold boat engine. A cursory audit of the premises would, thus, have indicated to a less thorough investigator more engines on the premises than were actually present. The witness testified that one of the defendants tried to dissuade her from conducting a thorough audit. In defense, the defendants suggested that perhaps their employees stole the engines and, unbeknownst to them, replaced them with the dead weight.

Upon considering the testimony, credibility, and demeanor of the witnesses, I conclude that the plaintiff has established by a preponderance of the evidence that the defendants Wilfred and Robert Watkins willfully and maliciously sold inventory which was subject to plaintiff's floor-plan out of trust, thereby causing injury to the plaintiff. Defendant Sharon Watkins, the wife of debtor Wilfred Watkins (who did not join her husband in the petition for relief nor file her own), and Sharon Watkins, the wife of Robert Watkins, I find to be totally innocent, as there was no evidence that they had anything to do with running the business. Therefore, references to "defendants" hereafter mean Wilfred and Robert Watkins only.

### LAW

The Sixth Circuit Court of Appeals has not ruled on the appropriate standard of proof for nondischargeability proceedings under § 523(a)(6). In *In re Martin*, 761 F.2d 1163 (6th Cir.1985), the court held the plaintiff to a clear and convincing standard of proof in a § 523(a)(2) action. However, neither the holding nor the reasoning of *Martin* are applicable in this § 523(a)(6) action.

The Court of Appeals' statement in *Martin* that the standard of proof in § 523(a)(2)(B) actions was "clear and convincing evidence" was *dictum.* The statement was made without discussion because the standard of proof was not the issue in the case. The comment is also no guide to the proper standard in § 523(a)(6) actions since § 523(a)(2)(B) does, but § 523(a)(6) does not mirror a common-law fraud action. It is likely that, to the extent that the court "chose" that standard for use in § 523(a)(2)(B) actions, it did so because, historically, "fraud" actions to avoid a commercial transaction have always required

---

1. *See Davis v. Aetna Acc. Co.,* 293 U.S. 328, 330, 55 S.Ct. 151, 152, 79 L.Ed. 393 (1934) and *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988) for a description of the typical "floor-plan" arrangement, and the term "out of trust".

2. This floor-plan financer, Chrysler First Diversified Credit, is not a party to this adversary proceeding.

proof by clear and convincing evidence. *See generally* 9 Wigmore, *Evidence* § 2498 (Chadbourn rev. 1981); 1 Jones, *Evidence* § 224 (Bancroft–Whitney 1958); *McCormick on Evidence,* 3rd Ed., p. 960 (West 1984); Wright & Miller, *Federal Practice and Procedure: Civil,* § 1296 (West 1969).[3]

McCormick noted that the requirement for clear and convincing evidence in fraud cases "had its origins in the standards prescribed for themselves by the chancellors in determining questions of fact in equity cases." Wright & Miller explained:

> Allegations of fraud or mistake frequently are advanced only for their nuisance or settlement value and with little hope that they will be successful.... Finally, as has been pointed out by the commentators, the old cliche that actions or defenses based upon fraud are disfavored and are scrutinized by the courts with great care because they often form the basis for "strike suits" still retains considerable vitality.

Despite this historic judicial antipathy toward fraud claims, the "modern tendency", Jones, *Evidence, supra,* is away from that standard. *See* the cases collected in 37 Am.Jur.2d, Fraud and Deceit, § 468, p. 642–643, n. 4–13; p. 645–646, n. 18–10; and in 1987 pocket part. This modern trend away from the clear and convincing evidence standard may be because in modern jurisprudence a fraud claim can be vindicated by mere monetary damages at law

whereas, historically vindication had to be sought by an action in equity for rescission of the completed commercial transaction.[4]

Research reveals a split of authority on the appropriate burden of proof in § 523(a)(6) actions. One line of cases applies a clear and convincing standard. *See e.g. American Honda Finance Corp. v. Loder,* 77 B.R. 213 (N.D.Iowa 1987); *In re Hensley,* 87 B.R. 164 (D.Kan.1988); *In re Moore,* 87 B.R. 499 (Bankr.S.D.Ohio 1988); *In re Cerar,* 84 B.R. 524 (Bankr.C.D.Ill. 1988); *In re Peoni,* 67 B.R. 288 (Bankr.S.D. Ind.1986); *In re Holtz,* 62 B.R. 782 (Bankr. N.D.Iowa 1986); *In re Alexander,* 58 B.R. 160 (Bankr.W.D.Wis.1984); *In re Wintrow,* 57 B.R. 695 (Bankr.S.D.Ohio 1986); *In re Kaufmann,* 57 B.R. 644 (Bankr.E.D.Wis. 1986); *In re Branch,* 54 B.R. 211 (Bankr.D. Colo.1985); *In re Egan,* 52 B.R. 501 (Bankr.D.Minn.1985); *In re Contento,* 37 B.R. 853 (Bankr.S.D.N.Y.1984); *In re Capparelli,* 33 B.R. 360 (Bankr.S.D.N.Y.1983); *In re Bothwell,* 32 B.R. 617 (Bankr.N.D. Iowa 1983); *In re Irvin,* 31 B.R. 251 (Bankr.D.Colo.1983); *In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Grainger,* 20 B.R. 7 (Bankr.D.S.C.1981). The other line applies a preponderance standard. *See e.g., Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *In re Shepherd,* 56 B.R. 218 (W.D.Va.1985); *In re Dubian,* 77 B.R. 332, 16 B.C.D. 428, 17 C.B.C.2d 516 (Bankr.D.Mass.1987); *In re Clark,* 50 B.R. 122 (Bankr.D.N.D.1985); *In re Boren,* 47 B.R. 293, 295, n. 8 (Bankr.W. D.Ky.1985); *In re Stephens,* 26 B.R. 389

**3.** Just as this opinion was to be signed, I received the slip opinion of the Sixth Circuit Court of Appeals in *In re Ward,* 857 F.2d 1082 Case No. 87–3525, decided September 16, 1988. At page 1083 of the opinion, the court stated, "MHT, as the party seeking an exception from discharge in bankruptcy, had the burden to prove reliance by clear and convincing evidence." In fact, its specific holding was that the lower courts' factual determination that "MHT failed to meet its burden of introducing clear and convincing evidence that it conducted even the most superficial credit investigation" was "not clearly erroneous". At p. 1084.

The phrase, "as the party seeking *an exception* from discharge" (emphasis added) is troublesome. It is a generalization that could mean that all exceptions to discharge (including, presumably, that an assault was willful and malicious (§ 523(a)(6)); child support is owed

(§ 523(a)(5)), a student loan debt is due (§ 523(a)(8)); a particular type of tax debt is owed (§ 523(a)(1)); a vehicular accident causing personal injury was the result of the debtor's drunkenness (§ 523(a)(9)) must be proven by clear and convincing evidence. Perhaps the court means just that. But since the case in which it made this "pronouncement" was just another false financial statement, i.e. fraud, case like *In re Martin,* 761 F.2d 1163 (6th Cir. 1985), I doubt it. This statement, too, then, is just *dictum,* and ought carry little weight in the determination of the appropriate standard of proof in this case.

**4.** For support for this proposition, see the discussion in *Household Finance Corp. v. Altenberg,* 5 Ohio St.2d 190, 34 Ohio Opp.2d 348, 214 N.E. 2d 667 (1966).

(Bankr.W.D.Ky.1983); *In re Tanner,* 17 B.R. 201 (Bankr.W.D.Ky.1982); *In re Baiata,* 12 B.R. 813, 817 (Bankr.E.D.N.Y.1981).[5]

Only one circuit of the Court of Appeals has addressed the question of which standard to apply in § 523(a)(6) cases.[6] In *Combs,* the Fourth Circuit held that the standard of proof in § 523(a)(6) cases is by a preponderance of the evidence. It said:

> The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge in § 523. In the face of this silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings. Although the "fresh start" philosophy of bankruptcy law requires that exceptions to discharge "be confined to those plainly expressed," *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915), this policy does not justify judicial imposition of a heavier burden of proof on creditors seeking to have a debt determined non-dischargeable under § 523(a)(6).
>
> Congress had reasons for enacting the exceptions to discharge in bankruptcy embodied in § 523. While bankruptcy proceedings are intended to afford debtors a "fresh start," the provision at issue here expresses Congress' determination that debts incurred as the result of a debtor's willful and malicious injury of another are of a type that bankruptcy ought not to forgive. The balance of these competing policies does not require a heightened standard of proof of the § 523 exception, ... we hold that the policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the

debtors' acts under § 523(a)(6) and by waiting for Congress, not the courts, to signal a departure from this standard. *Combs,* 838 F.2d at 116.

The bulk of the cases which even dare[7] to elect one standard of proof over the other do so without explanation. Since they do not even attempt to persuade, they offer no persuasive authority on this question. The remainder offer tidbits of analysis, but on closer inspection, either the analysis or the case authority underlying it are suspect. For example, *Wintrow* merely cited *Martin* for the proposition that a § 523(a)(6) action must be proven by clear and convincing evidence. Yet, as we have seen, *Martin* said no such thing. It merely stated, without explanation, or indication that it intended its comment to be read expansively, that the standard of proof in § 523(a)(2) actions was by clear and convincing evidence.

*Cerar* did the same thing. It, too, extrapolated from the opinion of the Court of Appeals from its own circuit and a district court opinion which followed it, which dealt with actions under § 523(a)(2) to somehow find that standard appropriate to § 523(a)(6).

The court in *DeRosa* did do some analysis of the issue. *DeRosa* dealt with a complaint which alleged that a certain debt was non-dischargeable under § 523(a)(2), (4) and (6). When determining the appropriate burden of proof, the court stated as follows:

> The traditional standard of proof (i.e., measure of persuasion) in civil cases generally is by a fair preponderance of the evidence. However, where fraud or dishonesty is at issue, the courts have typically required the higher and more exact-

---

**5.** To muddle matters even more, some discussions use the terms "clear and convincing evidence" and "preponderance of the evidence" interchangeably. *See In re Wightman,* 36 B.R. 246, 250 ("fair preponderance of the evidence", defined there as "the greater weight of convincing evidence"), 254 ("clear and convincing evidence") (Bankr.D.N.D.1984); 37 C.J.S. Fraud § 114a.

**6.** The Eleventh Circuit Court of Appeals affirmed a bankruptcy court determination that the plaintiff had "established willfulness by

clear and convincing evidence", without reaching the issue of whether that degree of proof was necessary. *Chrysler Credit Corp. v. Rebhan, supra.*

**7.** Most courts, I surmise, do what the Court in *In re Horldt,* 86 B.R. 823 (E.D.Pa.1988) did and "punt". They merely avoid the issue by saying that the plaintiff has failed to meet even the lower standard. Until now that's precisely what I have been able to do.

ing standard of clear and convincing evidence. *McCormick on Evidence*, § 340 (2nd Ed. 1972). Proceedings under §§ 523(a)(2) and 523(a)(4), both exceptions to discharge sounding essentially in fraud, should be decided on a standard of clear and convincing evidence. This has generally been the rule.

Although a claim under § 523(a)(6) alleging "willful and malicious injury" does not sound in fraud, the proof necessary to establish a "willful and malicious conversion" must essentially involve a showing of intentional fraud, dishonesty or deceit. Accordingly, the standard of proof appropriate to establish a claim of willful and malicious conversion under § 523(a)(6) should likewise be by clear and convincing evidence.

*DeRosa*, 20 B.R. at 310–311.

Such reasoning is unconvincing. While willful and malicious conversion may well be similar to intentional fraud, dishonesty or deceit,[8] the exception to discharge provided by § 523(a)(6) is broader than conversion. For example, a claim based upon an injury suffered in an assault perpetrated by a debtor may not be dischargeable in bankruptcy pursuant to § 523(a)(6). Nothing in the text or the legislative history of § 523(a)(6) supports a different standard of proof in § 523(a)(6) depending on the manner the willful and malicious injury is inflicted upon the plaintiff. It makes little sense to require a plaintiff whose collateral is unlawfully sold to prove the defendant's dishonesty by an elevated standard while permitting a plaintiff who is assaulted by the debtor or whose automobile is ruined by the debtor's having maliciously put sugar in the gas tank to succeed on a mere preponderance standard. Is the allegation against the former defendant any harsher as to his moral fiber than the allegation against the latter? His right to a good reputation is in no greater jeopardy than the alleged assailant's or vandal's. I, therefore, reject *DeRosa's* implicit discrimination between the standard of proof in assault or vandalism cases and conversion cases.[9]

Two cases, *Tanner* and *Stephens*, which attempt to support their view that the proper standard of proof in § 523(a)(6) actions is by a fair preponderance of the evidence by relying primarily on two United States Supreme Court cases also fail to persuade me, because a review of these cases, *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed.2d 1230 (1934) and *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27

---

**8.** In fact, in the former Bankruptcy Act, 11 U.S.C. § 1, *et. seq., repealed,* "willful and malicious conversion of the property of another" was categorized with "obtaining money or property by false pretenses or false representations" and false financial statement frauds in § 17(a)(2), 11 U.S.C. § 35(a)(2); *see In re Contento*, 37 B.R. 853, 854 (Bankr.S.D.N.Y.1984).

**9.** I, therefore, question the premise underlying the traditional view, apparently espoused by *DeRosa*, that:

Where dishonesty, or fraud, is at issue, the courts have typically required a higher standard of proof. In view of the scienter requirement of an "intent to deceive" imposed in the § 17a(2) [of the former Bankruptcy Act, 11 U.S.C. § 35(a)(2), *repealed*] exception, the reasoning behind the traditional requirement of a higher standard of proof for fraud or dishonesty is equally applicable here. This higher standard is based

on the fact that fraud is regarded as criminal in its essence, and involves moral turpitude at least, while, on the other hand, the presumption is that all men are honest, that individuals deal fairly and honestly, that private transactions are fair and regular, and that participants act in honesty and good faith. The presumption is against the existence of fraud and in favor of innocence, the presumption against fraud approximating in strength the presumption of innocence of crime.

37 C.J.S. *Fraud* § 94, p. 398 *et. seq.* (citations omitted).

*In re Huff*, 1 B.R. 354, 357, 1 C.B.C.2d 171 (Bankr.D.Utah 1979). To be called a fraud or a cheat is hurtful. But is it less hurtful to be called a murderer, rapist or vandal? If not, then why such solicitude for the feelings of the allegedly dishonest? *Quare:* how destructive of one's reputation is it if one is found to be a "converter", or even a "willful and malicious converter"? Is the reputation of a person who has been found to have sold a widget out of inventory without disbursing the proceeds to his financier as bad as that of a murderer or rapist or willful and malicious destroyer of property? If not, then there is no good reason to require clear and convincing evidence in cases of "dishonesty" but not in cases of other sorts of depravity.

L.Ed.2d 124 (1970), reveals that neither stands for the proposition cited. What's left of these cases then is that preponderance of evidence is the standard because these judges say so. Similarly, *Baiata*, 12 B.R. at 817, held that the "correct standard of proof in § 523 dischargeability proceedings in this district is a fair preponderance of the evidence," relying upon a series of the court's own unpublished opinions and several published opinions. Yet, even the published opinions fail to explain *why* the standard of proof they assert is the appropriate one.

Two recent cases have noted the split of authority concerning the appropriate standard of proof in § 523(a)(6) proceedings. *In re Salamone*, 71 B.R. 69 (E.D.Pa.1987); *In re Horldt*, 86 B.R. 823 (E.D.Pa.1988). Neither case decided the question presented here because each decided that the plaintiff failed to prove its case by even a preponderance of the evidence and so concluded that an analysis of the appropriate standard of proof was unnecessary.

After an exhaustive review of the cases on point, I am of the opinion that no opinion has thoroughly analyzed the issue of the proper standard of proof under § 523(a)(6). While it is apparent from the above discussion that I am not writing upon an entirely clean slate, I guess I am writing upon what may be termed a "dusty slate".

In *In re Winship*, 397 U.S. 358, 369–72, 90 S.Ct. 1068, 1075–77, 25 L.Ed.2d 368 (1970), Justice Harlan (concurring) explained the purpose for establishing different quantums of proof as follows:

> ... even though the labels used for alternative standards of proof are vague and not a very sure guide to decision-making, the choice of the standard for a particular variety of adjudication does, I think, reflect a very fundamental assessment of the comparative social costs of erroneous factual determinations.
>
> To explain why I think this so, I begin by stating two propositions, neither of which I believe can be fairly disputed. First, in a judicial proceeding in which there is a dispute about the facts of some

earlier event, the factfinder cannot acquire unassailably accurate knowledge of what happened. Instead, all the factfinder can acquire is a belief of what *probably* happened. The intensity of this belief—the degree to which a factfinder is convinced that a given act actually occurred—can, of course, vary. In this regard, a standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. Although the phrases, "preponderance of the evidence" and "proof beyond a reasonable doubt" are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions.

A second proposition, which is really nothing more than a corollary of the first, is that the trier of fact will sometimes, despite his best efforts, be wrong in his factual conclusions. In a lawsuit between two parties, a factual error can make a difference in one of two ways. First, it can result in a judgment in favor of the plaintiff when the true facts warrant a judgment for the defendant. The analogue in a criminal case would be the conviction of an innocent man. On the other hand, an erroneous factual determination can result in a judgment for the defendant when the true facts justify a judgment in plaintiff's favor. The criminal analogue would be the acquittal of a guilty man.

The standard of proof influences the relative frequency of these two types of erroneous outcomes. If, for example, the standard of proof for a criminal trial were a preponderance of the evidence rather than proof beyond a reasonable doubt, there would be a smaller risk of factual errors that result in freeing guilty persons, but a far greater risk of factual errors that result in convicting the innocent. Because the standard of proof affects the comparative frequency of these two types of erroneous out-

comes, the choice of the standard to be applied in a particular kind of litigation should, in a rational world, reflect an assessment of the comparative social disutility of each. When one makes such an assessment, the reason for different standards of proof in civil as opposed to criminal litigation becomes apparent. In a civil suit between two private parties for money damages, for example, we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. A preponderance of the evidence standard therefore seems peculiarly appropriate for, as explained most sensibly, it simply requires the trier of fact "to believe that the existence of a fact is more probable than its non-existence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."

In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty. As Mr. Justice Brennan wrote for the Court in *Speiser v. Randall*, 357 U.S. 513, 525–26 [78 S.Ct. 1332, 1341–42, 2 L.Ed.2d 1460] (1958):

"There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value —as a criminal defendant his liberty— this margin of error is reduced as to him by the process of placing on the other party the burden ... of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt."

In this context, I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.

The test to determine the appropriate standard of proof in civil cases is set forth in *Herman & MacLean v. Huddleston*, 459

U.S. 375, 389–90, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983). In *Huddleston*, the Court held that the preponderance standard was the proper burden of proof under § 10(b) of the 1934 Securities & Exchange Act. To reach this holding the Court considered the type of action, the risks faced by the defendant and the interests of the plaintiffs.

A preponderance-of-the-evidence standard allows both parties to "share the risk of error in roughly equal fashion." *Addington v. Texas, supra* [441 U.S. 418] at 423, 60 L.Ed.2d 323, 99 S.Ct. 1804 [at 1807–08 (1979)]. Any other standard expresses a preference for one side's interests. The balance of interests in this case warrants use of the preponderance standard. On the one hand, the defendants face the risk of opprobrium that may result from a finding of fraudulent conduct, but this risk is identical to that in an action under § 17(a) [of the 1933 Act], which is governed by the preponderance-of-the-evidence standard. The interest of defendants in a securities case do not differ qualitatively from the interests of defendants sued for violations of other federal statutes such as the antitrust or civil rights laws, for which proof by a preponderance of the evidence suffices. On the other hand, the interest of plaintiffs in such suits are significant. Defrauded investors are among the very individuals Congress sought to protect in securities laws, if they prove that it is more likely than not that they were defrauded, they should recover.

We therefore decline to depart from the preponderance-of-the-evidence standard generally applicable in civil actions.

*Huddleston*, 459 U.S. at 390, 103 S.Ct. at 691–92.

*Huddleston* requires me to consider the relative importance to the parties of the interests at issue.

Where Congress has not prescribed the appropriate standard of proof and the Constitution does not dictate a particular standard, we must prescribe one. In doing so, we are mindful that a standard of proof "serves to allocate the risk of error

between the litigants and to indicate the relative importance attached to the ultimate decision." Thus, we have required proof by clear and convincing evidence where particularly important individual interests or rights are at stake. By contrast, imposition of even severe civil sanctions that do not implicate such interest has been permitted after proof by a preponderance of the evidence.

*Huddleston*, 459 U.S. at 389–90, 103 S.Ct. at 691. (citations omitted). The standard of proof must, then, be a preponderance of the evidence unless the law places a particularly strong value upon the right to a discharge in bankruptcy such that it would be appropriate to assign the plaintiff a greater burden. How much importance does the law place upon a discharge in bankruptcy?

In *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court evaluated the importance of a discharge in bankruptcy. Kras sought leave to proceed *in forma pauperis* so that he might discharge certain indebtedness and thus achieve a "fresh start". The Court considered the constitutionality of the Bankruptcy Act's requirement of payment of all bankruptcy fees before any discharge. It compared divorce proceedings, in which payment of fees may be waived, *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), with a bankruptcy discharge and concluded that the exclusivity of remedy which supported the waiver of fees in divorce proceedings does not exist in the context of a bankruptcy discharge. "In contrast with divorce, bankruptcy is not the only method available to a debtor for the adjustment of his legal relationship with his creditors." *Kras*, 409 U.S. at 445, 93 S.Ct. at 638. Furthermore,

> [b]ankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are embedded in the First Amendment, that the Court has come to regard as fundamental and demand a lofty requirement of a compel-

ling government interest before they may be significantly regulated.

*Id.* at 446, 93 S.Ct. at 638.

Courts have decided over the years that certain rights demand greater protection than others. Therefore, in order to deprive someone of one of these rights, the other litigant is required to prove his case by an elevated standard of proof. The most elementary example of this, of course, is the right to liberty, best exemplified by the right to remain free of imprisonment. This right is guarded by the extremely protective "reasonable doubt" standard. *See Winship*, 397 U.S. at 362, 90 S.Ct. at 1071–72. Other examples of rights to personal liberty which are protected by a heightened standard of proof—in these cases by the clear and convincing evidence standard—are the right not to be deported, *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), and the right not to be stripped of one's American citizenship, *Chaunt v. United States*, 364 U.S. 350, 353, 81 S.Ct. 147, 149–50, 5 L.Ed.2d 120 (1960). The right to free speech is also jealously guarded. *New York Times Co. v. Sullivan*, 376 U.S. 254, 285–86, 84 S.Ct. 710, 728–29, 11 L.Ed.2d 686 (1964) imposed a clear and convincing evidence burden upon public officials who sue media for libel. Other incidents of the right to liberty, such as those rights involving the sanctity of the family, are protected by an elevated standard or proof. *See e.g., Boddie v. Connecticut, supra,* (the right to sue for divorce), *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (the right to continued care, custody, and control of one's minor children).

In various other serious matters, such as civil contempt, which, of course, can result in escalating fines and indefinite imprisonment, a heightened standard of proof is also required. *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611 (10th Cir.1983). Attempts to counteract strong public policies of all sorts have also been made the subject of proof to a higher degree. For example, the finality of a judgment is accorded special protection by a requirement that the one seeking to reopen it pursuant to F.R.Civ.P. 60(b)(3) establish his proofs

by a heightened standard. *See* cases collected at 7 Moore's *Federal Practice*, ¶ 60.24[5], n. 19 (Matthew Bender 1987). Similarly, at least Michigan requires that one who attacks a proof of service has the burden of proving his grounds by clear and convincing evidence. *Delph v. Smith*, 354 Mich. 12, 91 N.W.2d 854 (1958). Other examples are issues necessitating proof of

> ... the existence and content of a lost deed or will, for a parol gift or an agreement to bequeath or devise by will or to adopt; for mutual mistake sufficient to justify reformation of an instrument; for a parol or constructive trust; for an oral contract as a basis for specific performance; for impeaching a notary's certificate of acknowledgement; for prior anticipatory use of an invention; for an agreement to hold a deed absolute as a mortgage....

9 Wigmore, *Evidence* § 2498, p. 425–431 (collecting cases). Thus, we see that issues are required to be proven to a higher degree of proof "where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy grounds." McCormick, *Evidence*, § 340, p. 961.

> On the other end of the continuum
>
> ... is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion.

*SSIH Equipment SA v. United States Int'l. Trade Comm.*, 718 F.2d 365, 380 (Fed.Cir.1983). For this reason, anti-trust plaintiffs asserting the sham exception to the *Noerr–Pennington* doctrine, for example, need not prove the exception by any more than a mere preponderance standard. *Litton Systems, Inc. v. American Tel. & Tel. Co.*, 700 F.2d 785, 813–14 (2nd Cir. 1983). Most other civil actions involving "mere" economic interests likewise use nothing higher than a preponderance standard, and this includes even paternity cases. Even though such cases share some of the family overtones of child custody cases, as the defendant's interest in a paternity suit is primarily monetary, a preponderance of evidence is all that is required. *Rivera v. Minnich*, 483 U.S. ——, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987).

Since "bankruptcy legislation is in the area of economics and social welfare," *Kras*, 409 U.S. at 446, 93 S.Ct. at 638, the right to a bankruptcy discharge fits more easily into this latter, economic rights, category, than in the former, liberty rights, category. The value of a discharge in bankruptcy, then, is not so great as to justify placing a higher burden upon a plaintiff in a § 523 adversary proceeding. If a debtor is denied discharge as to a particular debt, he merely remains subject to the same risks and burdens of any other debtor outside of bankruptcy. The debtor and his creditor have nothing to lose but the possibility of having to pay, or of being able to collect, money should the factfinder err. Thus, there is no sound reason to require a heightened burden of proof. *See Winship*, 397 U.S. at 369–72, 90 S.Ct. at 1075–77.

It might be argued that this conclusion fails to consider the maxim "exceptions to discharge should be literally and strictly construed against the creditor and liberally in favor of the debtor." *DeRosa*, 20 B.R. at 309; 3 *Collier on Bankruptcy*, ¶ 523.05A (15th ed. 1988). However, I believe that the maxim is applicable only when construing the breadth of a statutory exception to discharge and not to the quantum of proof necessary to establish one of the factual elements of the cause of action. A creditor may, for example, bring an action alleging that a certain debt is nondischargeable under § 523(a)(6) and may prove all elements of the cause of action by a preponderance of the evidence, yet such debt must be held to be dischargeable if the conduct alleged and proven is not within the exception narrowly construed. This is precisely what frequently occurred, I believe, when victims of drunk driving accidents sought to have their claims held nondischargeable under § 523(a)(6).

▮ Bankruptcy courts are constantly presented with questions concerning the dischargeability of particular debts, as well as other questions particular to bankruptcy law; however, they cannot allow the apparent importance of these rights within the limited context of this area of law to skew their opinions concerning the relative importance of bankruptcy rights within the overall context of the law. We must guard against tunnel vision. After considering the nature of dischargeability actions, the risks faced by the defendants, and the interest of the plaintiffs, and pursuant to *Huddleston,* I hold that the plaintiff's burden in this action was to show by a mere preponderance of the evidence that the defendants willfully and maliciously injured the property of the plaintiff. Since I am so convinced by that quantum of evidence, I hold that the debt due to the plaintiff is not dischargeable in the defendants' bankruptcy cases. An appropriate judgment shall be entered forthwith.